[Cite as *Ferrara v. Liberty Twp. Zoning Bd. of Appeals*, 2018-Ohio-3537.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| J.V. FERRARA, | : | **O P I N I O N** |
| Appellant/Cross-Appellee, | : | |
| - vs - | : | **CASE NOS. 2017-T-0075** |
| | | **2017-T-0077** |
| | | **2017-T-0078** |
| LIBERTY TOWNSHIP ZONING BOARD OF APPEALS, | : | |
| | : | |
| Appellee/Cross-Appellant. | | |

Civil Appeals from the Trumbull County Court of Common Pleas.
Case Nos. 2016 CV 00379, 2016 CV 00380, & 2016 CV 00381.

Judgment: Affirmed in part and reversed in part; remanded.


*Glenn R. Osborne* and *T. Scott Kamenitsa*, Friedman & Rummell Co., L.P.A., 3801 Starrs Centre Drive, Canfield, OH 44406 (For Appellant/Cross-Appellee).

*Mark S. Finamore* and *Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 44481-1219 (For Appellee/Cross-Appellant).



TIMOTHY P. CANNON, J.

{¶1} On review before this court is the decision of the Trumbull County Court of Common Pleas, which affirmed in part and reversed in part a decision of the Liberty Township Zoning Board of Appeals ("BZA") denying J.V. Ferrara's applications for three conditional use permits. The applications have been consolidated for hearing and review throughout the proceedings. Mr. Ferrara noticed an appeal from the trial court's July 12, 2017 judgment, which was followed by the BZA's cross-appeal.

{¶2}    Following a cease and desist order issued by the Liberty Township Zoning Inspector, Mr. Ferrara submitted applications for three conditional use permits, seeking to operate a private club at three residential properties in Liberty Township, Trumbull County, Ohio.  One residence is located on Logan Way/Mansell Drive ("the Logan Way property"); the other two are located on West Liberty Street ("the Liberty Street properties").

{¶3}    The properties are zoned "single family," pursuant to the Liberty Township Zoning Resolution ("LTZR").  "Private clubs and parks" is an allowed use for single-family districts but requires a conditional use permit under LTZR Section 4:2.4.2.  LTZR Section 2:2.24 defines "club" as "[a]n organization of persons for special purposes or for the promulgation of sports, arts, literature, politics, or the like, excluding churches, synagogues, or other houses of worship."

{¶4}    The subject premises for the requested conditional use permits are three historic mansions owned in trust by Mr. Ferrara as the trustee; he seeks permission to rent the mansions to members of a Pine Lakes Club.  According to Pine Lakes Club's "Stay and Play Mansion Policies and Procedures," the Club provides its members "access to the Club's Golf Course partnering courses and facilities as a social and recreation club for the pleasure and recreation of its members, families and friends."

{¶5}    Mr. Ferrara's permit applications state the residences are "controlled by Pine Lakes Manor, Inc., a non-profit private club whose members are golf aficionados from outside the immediate area who use the Facility as lodging while they golf throughout the area."

2

**{¶6}** Two public hearings were held before the BZA, at which Mr. Ferrara and his attorney spoke in support of the applications. They stated the properties are not hotels or bed and breakfast facilities, but someone does check on the guests every day and gives them breakfast. Only Club members can utilize the properties, and only one "group leader" and his or her family and friends can stay at one of the properties at one time. They spoke as to how operating the Club enhances the local economic welfare by referring members to and partnering with 20 local golf courses, 10 local hotels, a lodge, and 4 mansions. Mr. Ferrara stated using the properties in this way, as opposed to rental properties, helps to control the amount of damage done to the historical residences. Mr. Ferrara indicated he has been operating the properties in this manner since 2008, but the private Club was formed in 2014. The properties are wooded and expansive, located on 10, 11.7, and 30 acres. A brochure was introduced as an exhibit that provides an overview of the Club, the properties, and the golf courses offered in conjunction with membership. The brochure states the three properties accommodate up to 16, 20, and 32 guests at a time; Mr. Ferrara stated he averages from 8 to 12 in a group. Prospective members must fill out an application form and sign a contract, as well as abide by the Club's "Stay and Play Mansion Policies and Procedures." There are approximately 300 members; dues are $10.00 payable by the group leader.

**{¶7}** Four participants at the public hearings spoke in support of Mr. Ferrara's applications: an abutting property owner stated he had no complaints; a renter who lives in a small house on one of the subject properties stated she feels very safe on the property and that it is a calm environment; the executive director of the Trumbull County Tourism Bureau spoke on the economic benefit of Mr. Ferrara's Club to the local area; and a

3

representative of a local hotel stated the Club brings them a lot of business during the golf season.

{¶8}    Seven area property owners or their designees expressed opposition to Mr. Ferrara's applications.  Some expressed appreciation for the boost to the local economy but were concerned about the effect of operating a seemingly commercial enterprise in a residential area.  The concerns related to increased traffic and noise at all hours, including fireworks, and the effect on the neighborhood by introducing transient guests to the area, who sometimes end up on the neighboring properties.  Six of the seven residents or designees spoke in opposition to application for the Logan Way property; one designee spoke in opposition to the application for the Liberty Street properties.

{¶9}    The BZA raised concerns regarding how the property is insured and taxed, guest safety issues, whether the guests are monitored for compliance with the Club's rules during their stay, the fact that the Club has paid staff, and why Mr. Ferrara never applied for a conditional use permit since 2008 when he began operating the properties as guest lodging.  In response to questioning by the BZA, Mr. Ferrara indicated the Club was formed in 2014 to fall in line with the Township's zoning policies, yet he did not apply for conditional use permits at that time; breakfast is prepared for the guests in the properties' kitchens by paid staff; the Club does not currently pay a "bed tax" for the properties; the properties are insured as private residences; "do not use" signs are *not* posted on the decorative, non-working fireplaces; and there is no mechanism in place to enforce the Club's "policies and procedures," such as the prohibition on fireworks or the 10:00 p.m. curfew.  There was also much discussion and debate between the members of the BZA and Mr. Ferrara and his attorney regarding whether this was actually a

4

commercial enterprise operating in residential neighborhoods, specifically as a bed and breakfast facility.

{¶10} Mr. Ferrara presented the BZA with a letter, maps, and photographs detailing the relationship of the subject properties to the complaining neighbors' properties; arrangements for the Club's proposed conditional use in response to the neighbors' concerns; and police reports from the 911 call center, indicating the absence of any noise complaints.

{¶11} The BZA ultimately voted unanimously to deny all three applications. Mr. Ferrara filed an administrative appeal in the trial court, which was submitted on the briefs.

{¶12} The trial court reversed the BZA's decisions as to the two Liberty Street properties, finding they were "arbitrary, capricious and unreasonable as the decision was not supported by a preponderance of substantial, reliable and probative evidence." The trial court affirmed the BZA's decision as to the Logan Way property, deferring to the BZA because "there was at least some competent and credible evidence in the record to rebut the evidence put forth by Ferrara[.]"

{¶13} Mr. Ferrara's appeal and the BZA's cross-appeal from this decision are now before this court for review.

{¶14} Mr. Ferrara raises two assignments of error:

[1.] The Trial Court erred by failing to rule that the Liberty Township Zoning Ordinance in question is unconstitutional in its application to Appellant's proposed use, since the ordinance is vague and allows, upon reasonable construction, a golf club of the type operated by Appellant.

[2.] The Trial Court erred by ruling that the record contained competent, credible and substantial evidence to support the Township Board's denial of Plaintiff's conditional use to continue running his golf club at Mansell Drive in Liberty Township.

5

**{¶15}** The BZA also raises two assignments of error:

[1.] The Trial Court erred by ruling that the record did not contain competent, credible and substantial evidence to support the Township Board's denial of Plaintiff's conditional use of the Liberty Street properties in Liberty Township.

[2.] The Trial Court erred by ruling that the Township Board's denial of Plaintiff's conditional use of the Liberty Street properties was 'arbitrary, capricious and unreasonable.'

**{¶16}** Under his first assignment of error, Mr. Ferrara argues the trial court erred by failing to rule that the ordinance is unconstitutional as applied to a membership-based golf club because, reasonably interpreted as a whole, the ordinance allows this use in a residential district.

**{¶17}** Mr. Ferrara first asserts his proposed use of the properties is "specifically authorized" by the LTZR. This argument lacks merit, as the only permitted uses of single-family zoned properties are "one single-family dwelling unit per plotted lot" and "one-story attached garages that do not exceed the ground floor area of the residence to which it is attached." Section 4:2.2. Because Mr. Ferrara's proposed use is that of a "private club," it is subject to the BZA's approval as a conditional use; it is not specifically authorized.

**{¶18}** Pursuant to R.C. 519.14(C), the BZA "may" grant conditional zoning certificates "for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution." The discretionary language indicates that, "[i]n matters concerning conditional use certificates, the statute does not require that the board *shall* do anything." *Essroc Materials, Inc. v. Poland Twp. Bd. of Zoning Appeals*, 117 Ohio App.3d 456, 461 (7th Dist.1997) (emphasis sic). "'The inclusion of conditional use provisions in zoning legislation is based upon a legislative recognition that although

6

certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances.'" *Carrolls Corp. v. Willoughby Planning Comm.*, 11th Dist. Lake No. 2005-L-112, 2006-Ohio-3209, ¶18, quoting *Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 341 (1980).

{¶19} The stated purpose of the LTZR is, in part, to "establish guidelines in order to protect, promote and improve the public health, safety, morals, convenience, order, appearance, prosperity and general welfare of the inhabitants of Liberty Township by protecting and conserving the character and social economic stability of residential, business, commercial, industrial and public use areas; [and] by securing the most appropriate use of land[.]" Section 1:2. Thus, Liberty Township is divided into districts that each have permitted and conditionally permitted uses. "Conditional use" is defined in LTZR Section 2:2.26 as "[t]hat use having some special uniqueness that requires a careful review of location, design, configuration and special impact to determine against fixed standards, the desirability of permitting its establishment on a specific site. It is considered provisional in nature and approved at the discretion of the Board of Zoning Appeals."

{¶20} LTZR Article 5 provides the general standards for conditional uses; there are no specific standards for "private clubs." The BZA is to use the general standards to determine whether "the proposed use is compatible with the intent of the underlying zoning district where the conditional use would be located." Section 5:1. Section 5:2 provides: "To ensure compatibility with the underlying zoning district and the Township

community in general, the following general criteria shall be reviewed by the Zoning

Inspector upon application for a conditional use permit. Conditional uses shall therefore:

> 5:2.1 Be harmonious and in accordance with the general and specific objective of Liberty Township's Comprehensive Plan and zoning regulations;
>
> 5:2.2 Be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.
>
> 5:2.3 Not be hazardous or disturbing to existing or future neighboring uses.
>
> 5:2.4 Be served adequately by essential public facilities such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewers, and schools; or the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such services.
>
> 5:2.5 Not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community.
>
> 5:2.6 Not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any persons, property, or the general welfare by reasons of excessive production of traffic, noise, smoke, fumes, glare or odors.
>
> 5:2.7 Have vehicular approaches to the property that shall be so designed as not to create an interference with traffic on surrounding public streets.
>
> 5:2.8 Not result in the destruction, loss, or damage of any natural, scenic, or historic feature of major importance.

{¶21} Mr. Ferrara asserts the LTZR is unconstitutionally vague as applied to him

because his proposed conditional use "meets or exceeds every single test that the

Township is required to follow by the express terms of its Ordinance." This argument

lacks merit. While Section 5:2 does provide that the BZA "shall" consider the above

8

criteria, it does *not* provide that a permit shall issue every time a proposed use satisfies that general criteria. Again, pursuant to R.C. 519.14, a board of zoning appeals has "the discretion to approve or deny conditional use permits, based on its evaluation of the unique circumstances of the petition[.]" *Essroc*, *supra*, at 461.

**{¶22}** The trial court did not err in failing to rule that the LTZR is unconstitutional as it was applied to Mr. Ferrara.

**{¶23}** Mr. Ferrara's first assignment of error is without merit.

**{¶24}** We consider the remaining three assignments of error in a consolidated analysis. Mr. Ferrara argues the trial court erred by finding the BZA's decision regarding the Logan Way property was supported by substantial, reliable, and probative evidence. The BZA argues the trial court erred by finding the BZA's decision regarding the Liberty Street properties was *not* supported by substantial, reliable, and probative evidence and by substituting its own judgment for that of the BZA.

**{¶25}** R.C. 2506.04 sets forth the standard of review regarding appeals from administrative decisions, including decisions issued by boards of zoning appeals. In construing this statutory provision, the Ohio Supreme Court has distinguished between the court of common pleas and the court of appeals standards of review. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000).

**{¶26}** In reviewing a decision of the BZA, the common pleas court "is bound by the nature of administrative proceedings to presume that the decision of the administrative agency is reasonable and valid." *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456 (1993), citing *C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298 (1974). The common pleas court

9

is to consider the entire record, including any new or additional evidence admitted under R.C. 2506.03, and determine "whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley*, *supra*, at 147 (citations omitted). "A court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984); *see also Dudukovich v. Lorain Metropolitan Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979).

{¶27} "An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil*, *supra*, at 34. "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶30.

{¶28} Here, the trial court took issue with the BZA's position that the Pine Lakes Club is a "guise" or a "pretext" created to fit the use of the properties into a conditionally permitted use. The trial court concluded that "[i]t seems the Zoning Board overstepped, at least in regard to the Liberty Street properties, and based its' entire decision on its unsupported opinion that the private club managed by Ferrara was pre-textual." This

10

conclusion, however, appears to discount the evidence presented to the BZA by Mr. Ferrara and the discussions that occurred at the hearings.

{¶29} Mr. Ferrara sought permission to conditionally use his properties as "private clubs." As stated, "club" is defined in LTZR Section 2:2.24 as "[a]n organization of persons for special purposes or for the promulgation of sports, arts, literature, politics, or the like, excluding churches, synagogues, or other houses of worship." The evidence presented, however, established that Mr. Ferrara actually uses the properties to provide temporary lodging to groups of people who are participating in golf travel packages that Mr. Ferrara organizes and sells. Mr. Ferrara described the travel packages, which he organizes in conjunction with local golf courses; the lodging he provides is part of the package. Mr. Ferrara stated he has engaged in this "business" since 2008. He stated the Club was formed in 2014 to "fall in with the policies of the township," but that he did not apply for conditional use permits even at that time. Further support for pretext is that the annual membership dues are only $10.00, which is only paid by the "group leader," and the $10.00 is deducted from the entire cost of the purchased travel package. Additionally, Mr. Ferrara admitted that breakfast is prepared for the guests on-site every morning by paid staff, which is contrary to his assertion that these properties are not being used as bed and breakfast facilities.

{¶30} Although the BZA did not issue findings of fact or conclusions of law, nor was it required to do so, it is apparent from the transcript of the hearing that the BZA was not convinced Mr. Ferrara's enterprise is a "private club":

Q: You made reference to the Pine Lake's Club is a not-for-profit?

A: Yes, sir.

11

Q: And the revenues that are generated - - where do they go?

A: The dues are paid at a nonprofit, which gives them the ability to use the locations and play the golf courses, and they're getting the golf package through Pine Lakes.

Q: But there are the residual revenues that are derived from this activity that would be in some way to support or sustain those facilities - - would they not, sir?

A: Yes, sir - - that's true, through Pine Lakes.

Q: Would you acknowledge that it is - - or sounds like a commercial enterprise?

A: It's an enterprise that brings people into the area and gives them a two (2), three (3) days a week of staying in a facility that they normally wouldn't be into; and part of it - - as far as you're saying "commercial enterprise" - - they're paying money for golf, and they're paying money for their stay with us. So you can determine, I guess, which way you want to call it; but it's still a club just like Youngstown Country Club. They're a club, and they operate, you [know]. We're operating on acreage - - big acreages, and we're not a retail shopping coming in there and - - stay for a night, for one (1) person or ten (10) people in the same facility, that are not part of that group.

Q: I certainly am not adverse to the creation of revenue for the communities involved, but the concept here is residential areas versus commercial area.

A: Uh-huh.

Q: That's - - I mean, that's my interpretation here. It's a residential area is being converted into a commercial enterprise.

[MR. FERRARA'S ATTORNEY]: If I may, Members of the Board, I'd just like to add that regarding your observation of "commercial", conditional uses may be commercial enterprises. If you look at the conditional uses listed in your Ordinance, some of those are. So I don't' think that - - that making income - - revenue for the community is necessarily a dirty word in this connection or is counterproductive to a conditional use granted. What you look at is the other factors stated in your Ordinance - - look at the purpose, the preamble clause, about the overall benefit to the community, compared with the drain on the area in terms of burden on the residential neighborhood, but

12

not necessarily to the extent - - to the extent of whether or not there is money generated by the enterprise.

Q: Well, I would agree that the monetary aspect of this is not the issue, but I would say that - - there are some conflict with the conditional use standards that are cited in Section 5 of the Ordinance.

[ATTORNEY]: I think it's a balancing task. You look at all the factors, and you balance it and make a determination. You do have a great deal of discretion, in that regard, Members of the Board; and I think so the goal would be to look at it, as a whole, in terms of its burdens on the community, which we have heard tonight. There are some - - versus its benefits to the community.

Q: Well, there's a - - there's an obligation, on the part of this Board, to give consideration to the Township, as a whole, and its residents.

[ATTORNEY]: I agree with that sir, yes.

* * *

Q: I would like to comment on that if I could, and address a little bit - - at least my questions regarding how it's operating, the revenue stream. * * * The question before us is - - is this place operating as a private club?

Whereupon the hearing was adjourned to a later time so that the BZA could consult with their attorney for assistance with answering that question.

{¶31} Based on Mr. Ferrara's testimony, the BZA's opinion that the Club is a "guise" or a "pretext" finds support in the record. The trial court appears to have improperly substituted its judgment in this regard for that of the BZA.

{¶32} As to the two Liberty Street properties, the trial court held the BZA's decision was "arbitrary, capricious and unreasonable as the decision was not supported by a preponderance of substantial, reliable and probative evidence." This conclusion was based, in part, upon the trial court's finding that there was no testimony in opposition to the Liberty Street properties. The trial court stated: "[o]ne witness spoke on behalf of a

13

relative residing on a nearby street and it is not clear from the record which application would directly affect the relative's property."

**{¶33}** It appears from the record, however, that the witness was speaking about one of the Liberty Street properties. The witness to which the trial court refers, Martin Hume, was speaking in opposition on behalf of his aunt, Eleanor Katz. In the documents submitted to the BZA by Mr. Ferrara, he indicates Ms. Katz is a neighbor of "the Chalet," which is one of the Liberty Street properties. Thus, there was testimony in opposition to at least one of the Liberty Street properties.

**{¶34}** As to the Logan Way property, the trial court deferred to the BZA because "there was at least some competent and credible evidence in the record to rebut the evidence put forth by Ferrara[.]" The trial court drew this conclusion from the testimony that was presented to the BZA by the six opposing residents or their designees. While this testimony did rebut some of the evidence put forth by Mr. Ferrara regarding noise, traffic, and disruption to the neighborhood, we also note that the BZA's decision was supported by additional evidence offered by Mr. Ferrara, as referenced above.

**{¶35}** We conclude the trial court's decision as to the Logan Way property is supported by a preponderance of the evidence and the record as a matter of law. The trial court's decision as to the Liberty Street properties, however, is unsupported by a preponderance of the evidence and the record as a matter of law, and the trial court improperly substituted its own judgment for that of the BZA. The BZA's decision in an application such as this, where it exercises discretion concerning a conditional use of property that is not a permitted use, is entitled to great weight. While nothing prohibits

14

the filing of another application for this use, appropriate conditions that govern the proposed use should be established before engaging in the activity.

{¶36} Mr. Ferrara's second assignment of error is without merit.

{¶37} The BZA's first and second assignments of error are well taken.

{¶38} The judgment of the Trumbull County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court to enter judgment affirming the BZA's decisions for all three properties.


THOMAS R. WRIGHT, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.