[Cite as *Okey v. Alliance Planning Comm.*, 2019-Ohio-2390.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEBORAH A. OKEY, et al. | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|     Appellees | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2018 CA 00144 |
| CITY OF ALLIANCE PLANNING<br>COMMISSION | |
|     Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Case No. 2017 CV 02505

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    June 14, 2019

APPEARANCES:

For Appellees

STEVEN P. OKEY
THE OKEY LAW FIRM LPA
337 Third Street, NW
Canton, Ohio 44702

For Appellant

JENNIFER L. ARNOLD
LAW DIRECTOR
WILLIAM F. MORRIS
ASSISTANT LAW DIRECTOR
470 East Market Street
Alliance, Ohio 44601

*Wise, J.*

{¶1} Appellant City of Alliance Planning Commission ("APC") appeals the decision of the Stark County Court of Common Pleas, which overturned the commission's administrative denial of a conditional use permit for a bed and breakfast inn sought by Appellees Deborah Okey and Steven Okey. The relevant facts leading to this appeal are as follows.

{¶2} Appellees are the owners and occupants of a 7,000 square-foot residence located at 2700 Fairway Lane, Alliance, Ohio. The thirteen-acre property at issue, which appellees purchased in 1995, is currently located in an "R-1" (single family residential) zone in the extreme southeastern corner of Alliance, bordering the Alliance Country Club. The wooded property sits at the terminus of the lane, which is narrower than a typical Alliance street. The house itself, commonly known as the "Purcell Mansion," was constructed in 1929, and is listed in the National Register of Historic Places by the U.S. Department of the Interior. Appellees have been restoring the property over the past twenty-four years. The house served as appellees' marital residence during that time, although their children are now grown and living on their own.

{¶3} On October 20, 2017, appellees submitted an application for review by the APC concerning a conditional use of the Purcell Mansion as a bed and breakfast facility, with the planned utilization of three guest units.

{¶4} On November 15, 2017, the APC held a hearing on said application for the conditional use permit. As further detailed *infra*, at the conclusion of the hearing, the commission voted 5-0 to deny appellees' application. The decision was memorialized in a letter to appellees from the zoning inspector dated December 13, 2017.

{¶5} On December 14, 2017, appellees filed an administrative notice of appeal under R.C. 2506.01, *et. seq.* with the Stark County Court of Common Pleas ("trial court").

{¶6} On June 4, 2018, the trial court set a hearing date and issued a ruling stating that it would accept both the transcript of the administrative proceedings and additional evidence as provided by the parties. *See* R.C 2506.03(A). Following the submission of the parties' briefs, the trial court held its evidentiary hearing on June 12, 2018, at which time it heard additional testimony and received additional exhibits.

{¶7} On August 24, 2018, the trial court issued a seventeen-page judgment entry reversing the 2017 administrative decision, thus finding in favor of appellees as to their request for a conditional use permit.[1]

{¶8} On September 19, 2018, Appellant APC filed a notice of appeal to this Court. It herein raises the following two Assignments of Error:

{¶9} "I. COMPETENT CREDIBLE EVIDENCE EXISTS TO SUPPORT THE DECISION OF THE PLANNING COMMISSION.

{¶10} II. THE COMMON PLEAS COURT ABUSED ITS DISCRETION AND APPLIED THE AN [SIC] IMPROPER STANDARD FOR ITS REVIEW OF THE APPLICATION FOR A CONDITIONAL USE."

I.

{¶11} In its First Assignment of Error, Appellant APC challenges the trial court's decision, contending that "competent credible evidence" supported the administrative decision to deny the conditional use permit sought by Appellees Okeys.

---

[1] Appellant APC has failed to include or attach with its brief a copy of the judgment entry under appeal. *See* Loc.App.R. 9(A). We have nonetheless reviewed the original trial court judgment entry in the record.

### *Conditional Use / Zoning*

**{¶12}** Generally, zoning regulations are in derogation of common law and must be strictly construed and not extended by implication. *See Ambrose v. Galena*, 5th Dist. Delaware No. 15 CAH 01 0011, 2015-Ohio-3157, ¶ 35, citing *Lykins v. Dayton Motorcycle Club* (1972), 33 Ohio App.2d 269, 294 N.E.2d 227.  "The inclusion of conditional use provisions in zoning legislation is based upon a legislative recognition that although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances." *Carrolls Corp. v. Willoughby Planning Comm.*, 11th Dist. Lake No. 2005-L-112, 2006-Ohio-3209, 2006 WL 1725864, ¶ 18, quoting *Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 341, 405 N.E.2d 1034 (1980) (internal quotations omitted). However, a conditional use is not the same as a permitted use. A conditional use is a lesser use and is not a matter of right. *See Groff-Knight v. Bd. of Zoning Appeals* (June 14, 2004), Delaware App. No. 03CAH08042, ¶ 18, citing *Gillespie v. City of Stow* (1989), 65 Ohio App.3d 601, 584 N.E.2d 1280.

### *Trial Court's Standard of Review*

**{¶13}** R.C. 2506.04 sets forth the applicable standard of review for a court of common pleas in an administrative appeal. It provides as follows:

> *** [T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause

to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

**{¶14}** The Ohio Supreme Court further stated as follows in *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433:

[W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *See Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, * * * citing *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 206–207, 12 O.O.3d 198, 389 N.E.2d 1113 ***.

**{¶15}** A determination that an agency decision is supported by reliable, probative, and substantial evidence does not meet the standard; the decision must be supported by a *preponderance* of such evidence. *White v. Summit County*, 9th Dist. Summit No. 21152, 2003-Ohio-1807, ¶ 10 (emphasis in original).

**{¶16}** As we mentioned in our recitation of the procedural facts *supra*, the trial court in this instance invoked the use of an evidentiary hearing under R.C. 2506.03(A),

finding in part that "the majority of the statements provided at the Commission hearing were not under oath" and that the APC had not filed any factual findings in support of its 2017 decision. *See* Judgment Entry, August 24, 2018, at 11. We note that supplementation of evidence under R.C. 2506.03(A) "does not alter the common pleas court's standard of review to affirm the administrative board's decision absent the court's conclusion that it is deficient in one of the aspects enumerated in R.C. 2506.04." *Gibraltar Mausoleum Corp. v. Toledo*, 106 Ohio App.3d 80, 84, 665 N.E.2d 273 (6th Dist.1995).

### *Appellate Standard of Review*

**{¶17}** As an appellate court, however, our standard of review to be applied in an R.C. 2506.04 appeal is "more limited in scope." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Id.* at f.n.4. *See, also, Health Management, Inc. v. Union Twp. Bd. of Zoning Appeals* (1997), 118 Ohio App.3d 281, 285, 692 N.E.2d 667. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

**{¶18}** Ultimately, the standard of review for appellate courts in a 2506 zoning appeal is whether the common pleas court abused its discretion in making its determinations pursuant to R.C. 2506.04. *See Weber v. Troy Twp. Bd. of Zoning Appeals,* 5th Dist. Delaware No. 07 CAH 04 0017, 2008–Ohio–1163, ¶ 13 (additional

citation omitted); *Powers v. City of Rocky River Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 70439, 1996 WL 648689. Thus, the standard of review for appellate courts in this context is "designed to strongly favor affirmance." *Frazeysburg v. Stokes*, 5th Dist. Muskingum No. CT2018-0022, 2018-Ohio-4153, ¶ 17, citing *Cleveland Clinic Foundation v. Cleveland Board of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161. These standards permit reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law. *Cleveland Clinic Foundation*, *supra,* at ¶ 30.

### *Relevant Alliance Provisions*

**{¶19}** It is undisputed that the Purcell Mansion is in an R-1 (single family residential) district. An R-1 district is addressed in the Alliance Codified Ordinances as follows:

> The purpose of the R-1, Single Family Residential District is to provide a range of choices of single family living environments, encouraging the development and maintenance of suitable neighborhoods for families and children, prohibiting uses of land that would adversely impact residential neighborhoods, and discouraging uses that would generate traffic on local streets in excess of normal traffic generated by the neighborhood. The intent of the district is to provide for an environment of predominantly single-family dwellings, along with other associated uses and facilities that serve the residents in the district, including but not limited to

educational, cultural, and religious institutions, parks and playgrounds, and municipal facilities.

The R-1 District also recognizes those portions of the Mount Union College (College) campus that are located in the R-1 District and provides the opportunity for the College to continue to operate and grow within the context of this Ordinance in consideration of surrounding residential neighborhoods.

{¶20} Specifically, Alliance Code 1162.05 defines a bed and breakfast inn as a conditional use:

(a) Primary Residence. The dwelling shall be the primary and permanent residence of the bed and breakfast inn operator. Meals or other services provided on the premises shall only be available to residents, employees and overnight guests of the establishment.

(b) Guests. There shall be a maximum of five rooms for lodging, with a maximum of 15 guests at any given time. Guests may stay no longer than 14 days in succession or a total of 60 days in any 12 month period. Off-street parking areas shall be provided for guests outside of any required front yard. Stacking of more than two vehicles in a driveway is prohibited.

(c) Landscaping. Screening shall be provided between adjacent residences and parking areas or any outdoor eating area, in compliance with the screening requirements of this Ordinance.

(d) Outside Activities. Outside activities may be permitted, provided

that the above requirements and all other requirements of this Ordinance

can be met.

**{¶21}** Finally, Alliance Code 1180.21(c) provides the "Standards for Granting

Conditional Use Approval." In summarized form, these standards or considerations are

headed as follows: (i) Compatibility with Adjacent Uses, (ii) Compatibility with the

Comprehensive Land Use Plan, (iii) Compliance with Applicable Regulations, (iv) Use of

Adjacent Property, (v) Public Services, (vi) Impact of Traffic, (vii) Enhancement of

Surrounding Environment, (viii) Impact on Public Health, Safety, and Welfare, (ix)

Isolation of Existing Uses, (x) Need for the Proposed Use.

*Analysis*

**{¶22}** In this instance, the trial court first considered the record of the APC hearing,

finding that the testimony at said hearing established that the Purcell mansion was the

primary residence of appellants, who would be in residence when the three-bedroom inn

had guests present. Judgment Entry at 7. The court also determined that there would be

no on-site manager for the facility and no cooking and cleaning staff.[2] Furthermore, as

per Alliance Code 1162.05(b), off-street guest parking had been made available in a

paved lot, with room for at least six cars. *Id.* Also, in implicit reference to Alliance Code

1162.05(c), foliage and woods kept the property naturally screened and secluded. *Id.*

The trial court also noted that a vehicle turnaround was available for guests to make

back-up turns unnecessary. *Id.*

---

[2]  Nonetheless, the court also referenced meals being provided to "employees," as well
as the "residents" (presumably appellees) and overnight guests. *Id.*

**{¶23}** But the court went on to recognize that roughly the final two-thirds of the APC hearing transcript was dominated by a discussion of appellees' additional seeking of a zoning variance to serve food or provide services to "guests of guests," even though that was a separate issue being handled by the Alliance Board of Zoning Appeals ("BZA") rather than the Alliance Planning Commission.[3] In that vein, the court found:

> In addition to allowing itself to become sidetracked by an issue outside of its jurisdiction (the requested BZA variance) and its speculative concerns about what the BZA might or might not do, the Commission also allowed its discussion to become commandeered by a single member who spent an inordinate amount of time engaging in what can only be described as hyperbolic speculation about the potential scenarios that might arise if a B&B conditional use permit and a BZA variance were granted.

**{¶24}** Judgment Entry at 9.

**{¶25}** The trial court thus proceeded to additionally consider the evidence taken at its own evidentiary hearing, conducted pursuant to R.C. 2506.03(A). Among other things, the court determined that the "proposed B&B could fill a need in the community especially given the proximity of the Alliance Country Club and the University of Mount Union." Judgment Entry at 16; Alliance Code 1180.21(c)(x). As to traffic flow concerns, the court heard testimony that Fairway Lane is about 12 feet wide, compared to the standard 30 feet for a typical Alliance city street. Tr. at 87 (City Engineer Bungard testimony). Bungard at first had stated that Fairway Lane is "a very narrow road *** lined

---

[3] It is presently undisputed that APC does not grant the type of variance appellees would need for larger events on the property. *See* Court Tr. at 94.

on both sides by trees and ditches, difficult to get back to." Tr. at 74. However, on cross-examination, Bungard clarified that there were not significant dual roadway ditches near the mansion. *See* Tr. at 98. The trial court made specific note *inter alia* of Deborah Okey's testimony that one end of Fairway Lane has a turnaround 79 feet in diameter, which would accommodate travel even by a vehicle with a boat or trailer. Judgment Entry at 12.

**{¶26}** An area resident, Frank Triplett, expressed *inter alia* his concern that a fire truck could block the lane in the event of an emergency. Tr. at 123. He also indicated that he would not know who his temporary neighbors would be at any given time, and this presented a potential risk to the value of his property. Tr. at 127. He worried about more traffic on the narrow Fairway Lane, on which one already had to pull over to let another pass by in the opposite direction. Tr. at 129. Triplett also questioned whether appellees would have to hire staff for the inn. Tr. at 146

**{¶27}** Gary Smith, who, like all of the remaining trial court witnesses, lives on nearby Fairway Drive (not to be confused with Fairway Lane)[4], recalled that Fairway Lane was never given a proper foundation, as it was just "chipped and sealed" more than 28 years ago. Tr. at 159. He estimated that vehicles got stuck in ditches in the neighborhood at least once a year. Tr. at 160. He labeled the darkness of the road at night a "serious concern." Tr. at 164. On cross-examination, Smith conceded that he understood the mansion would remain as the Okeys' residence should the bed and breakfast plan be approved. Tr. at 172-173.

---

[4] Drivers must travel on Fairway Drive in order to get to Fairway Lane. Tr. at 121.

**{¶28}** Karen Smith, Gary's wife, also referenced the narrowness of Fairway Lane and Fairway Drive, stating it was not safe for a truck to get past a vehicle on the roadway, and noting that there were bicyclists, skateboarders, and persons using baby strollers in the area. Tr. at 187-188.

**{¶29}** Other witnesses included Nancy Hinchliffe, who recalled that she has seen delivery trucks have to back down Fairway Lane, as they could not turn around. Tr. at 200. Stephanie Henschen emphasized that their "community is very close," and she reiterated that the Purcell Mansion is at the back end of the lane and that the area has a lack of lighting. Tr. at 209-210. Alan Andreani has observed materials being moved on Fairway Lane with a dolly, as truck drivers do not want to risk negotiating the lane. Tr. at 224. On cross-examination, Andreani conceded he did not know if the truck he had seen most recently was delivering to a particular property on Fairway Lane. Tr. at 228.

**{¶30}** This Court has aptly recognized that "*** where a proposed building is admittedly legal and conforms in all respects to the current law, the mere perceived threat of possible future nonconforming use cannot constitute an adequate basis for denying a zoning permit." *Hagan v. Marlboro Twp. Board of Zoning Appeals*, 5th Dist. Stark No. 95 CA 0086, 1996 WL 74009. In the case *sub judice*, the trial court ultimately expressed its concern that the APC's decision to deny the conditional use had been made "not because of non-compliance with other ordinances, and not because of any actual evidence regarding the other factors, but because of a concern that some future violations might occur or some broader usage might be permitted by the BZA." *Id.* at 13. As indicated *supra*, while the sole trial court witness for appellees was Deborah Okey herself, several area residents did express their concerns about such factors as lighting

on the lane, road width, vehicle turnaround possibilities, and capacity for delivery trucks; indeed, it would not at all be unexpected for nearby property owners in such circumstances to protest even slight changes to the accustomed day-to-day pace of residential neighborhoods. However, in this instance, based on our limited review pursuant to *Kisil, supra*, we do not conclude the trial court abused its discretion in finding that the APC decision denying the conditional use for appellees' bed and breakfast inn was unsupported by a preponderance of reliable, probative and substantial evidence.

**{¶31}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶32}** In its Second Assignment of Error, Appellant APC maintains the trial court abused its discretion in reversing the commission's denial of appellees' application and applied an incorrect standard of review in reaching its decision. We disagree.

**{¶33}** Appellant initially directs us to two cases in support. The first is *Ferrara v. Liberty Twp. Zoning Bd. of Appeals*, 11th Dist. Trumbull No. 2017-T-0075, 2018-Ohio-3537, 109 N.E.3d 41. In that case, Ferrara, on behalf of a trust, requested conditional use permits for three historic mansions, one of which was equipped to host up to 32 quests. Ferrara essentially sought permission to rent the mansions to members of a private golfing club, who would lodge at the mansions when they were in the area to golf. The conditional use in *Ferrara*, unlike in the present case, pertained to a "clubs and parks" section of the pertinent zoning resolution. It was also specifically noted that the properties were not intended to be set up as traditional hotels or bed and breakfast facilities. *Id.* at ¶ 6. In *Ferrara*, the BZA had taken the position that the private club at issue was "pre-textual," even though the trial court thereafter concluded otherwise as to

two of the three properties. However, the appellate court found the trial court's conclusion in this regard, as to two of the properties, "appears to discount the evidence presented to the BZA by Mr. Ferrara and the discussions that occurred at the hearings." *Ferrara* at ¶ 28.

**{¶34}** Appellant secondly directs us to *D.M.R. Dev. v. City of Cleveland*, 8th Dist. Cuyahoga No. 45836, 1983 WL 2777. That case involved a car storage and repair business seeking a variance to expand into a 24-four towing service. The City denied the initial applications. D.M.R. appealed to the Cleveland BZA, but after a hearing, the variance for the towing service was denied. Upon appeal to the Cuyahoga County Common Pleas Court, the court held that the operation of a towing service was not an extension or enlargement of the non-conforming use already enjoyed by the owners, and the decision of the BZA was reversed. The Eighth District, upon appeal, then reversed the common pleas decision, thus upholding the original denial of the variance, finding the towing service indeed would be a prohibited expansion of the existing business on the property. In so doing, the appellate court specifically noted, among other things: "The testimony indicate[d] that [D.M.R.'s operator] has *already* caused a disturbance in the neighborhood with his towing." (Emphasis added).

**{¶35}** Upon review, while both of the aforesaid cases resulted in appellate reversal of a trial court's rejection of an administrative decision, we are not persuaded that the facts and reasoning of *Ferrara* or *D.M.R.* would warrant our reversal in the case *sub judice*, as urged by appellant.

**{¶36}** Appellant correctly recites that an administrative board is a public body, and therefore its decision on a variance must be accorded a presumption of validity. *See*

*McCauley v. Ash* (1955), 97 Ohio App. 208, 124 N.E. 2d 739. The Ohio Supreme Court has recognized that in reviewing an appeal of an administrative decision, a court of common pleas begins with the presumption that the board's determination is valid, and the appealing party bears the burden of showing otherwise. *See C. Miller Chevrolet v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 302, 313 N.E.2d 400. Simply because a proposed use meets the required criteria does not necessarily mean that the use must be allowed. *Belich v. City of Olsmted Falls,* 8th Dist. Cuyahoga Nos. 84537, 84807, 2005-Ohio-190, ¶ 45.

**{¶37}** Nonetheless, our reading of the trial court's thorough written decision in this matter does not lead us to the conclusion that the court erroneously shifted the burden away from appellees, as appellant asserts. We therefore find no merit in appellant's final claim that the trial court failed to apply the correct standard of review in its administrative appeal decision.

**{¶38}** Appellant's Second Assignment of Error is overruled.

**{¶39}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.
Gwin, P. J., and
Delaney, J., concur.


JWW/d 0528